## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| Steve Nichols, individually and on behalf of all others similarly situated, | 1:23-cv-01022 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Google LLC, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.      Google LLC ("Defendant") sells the Pixel 4a, Pixel 5, and Pixel 5a mobile phones, advertised as capable of accessing 5G broadband networks ("Products").





2.      Whereas 4G networks are plagued by congestion, 5G networks allow the public to access the full potential of the internet, whether watching movies, working or taking classes.



3.      A recent software from Google for the Pixel 4a, Pixel 5, and Pixel 5a removed their ability to access 5G networks.[1]

4.      These models are similar in that they use Qualcomm's Snapdragon chipsets.

5.      Experts hypothesized that 5G access was removed due to compatibility issues with "VoNR" or Voice over New Radio technology, even though Google's use of Qualcomm Product Support Tools ("QPST") would have allowed these devices to continue to use 5G networks.

6.      Observers have noted that newer Pixel models with Google's Tensor chips are unaffected and can still access 5G networks.

7.      The timing of this update supports those who have criticized technology companies like Google for employing planned obsolescence, a practice banned by some countries.

8.      This refers to designing products to break quickly or become obsolete in the short to mid-term, to encourage sales of new products and upgrades.

9.      Some suggest that Google may have deliberately waited until after its efforts of

---

[1] Alan Friedman, Three Pixel models lost support for 5G SA networks following the March update, Phone Arena, Mar. 25, 2023.

encouraging users to upgrade to newer Pixel models, despite those users' phones working without issues.

10.   The only way to restore 5G access on these devices are complicated and not capable of being implemented by the typical user.

11.   This requires downgrading the firmware, unlocking the SIM card, and manipulating all sorts of internal software code.

Jurisdiction and Venue

12.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

13.   The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

14.   Plaintiff is a citizen of Colorado.

15.   Defendant's member, Google North America, Inc., is a citizen of Delaware and California.

16.   The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

17.   The members of the class Plaintiff seeks to represent are more than 100, because the Products have been sold for several years, with the representations described here, from third-party retailers including network providers like AT&T, Verizon, T-Mobile, electronic stores and websites and directly from Defendant in the States covered by Plaintiff's proposed classes.

18.   Venue is in this District because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to these claims occurred here.

<u>Parties</u>

19.   Plaintiff Steve Nichols is a citizen of Fort Collins, Colorado, Larimer County.

20.   Defendant Google LLC is a Delaware limited liability company with a principal place of business in Mountain View, California.

21.   Defendant is a leader in mobile phone technology through its Android operating system ("OS") and its flagship Pixel phones.

22.   The Pixel series routinely ranks among the best phones in the market, largely due to timely software updates because Google does not have to go through a separate phone manufacturer to deliver them.

23.   The affected Pixel models cost between $500 and $1,000 when first released and were marketed with the ability to access 5G networks.

24.   According to technology providers, consumers pay more for devices that are capable of accessing faster 5G networks.

25.   As a result of the false and misleading representations, the Products are sold at a premium price, higher than similar products, represented in a non-misleading way, and higher than they would be sold for absent the misleading representations and omissions.

26.   Plaintiff purchased the Google Pixel 5 shortly after it was released in or around October 2020 from stores including Verizon, Best Buy and/or Amazon.com for roughly $700 excluding tax.

27.   Plaintiff paid more for the Pixel than he would have paid if he knew it would not remain capable of accessing the 5G network.

28.   Upon installing the operative update from Defendant, Plaintiff's device no longer had 5G service in locations they previously did.

29.     The network signal regularly displayed an exclamation point "!" instead of bars representing service.

30.     Plaintiff contacted his carrier, Verizon, who confirmed the Product was 5G capable.

31.     Verizon went through troubleshooting steps and was unable to solve the issue.

32.     Verizon confirmed there were no network outages.

33.     Plaintiff contacted Google who confirmed the Product was 5G capable.

34.     Google asked Plaintiff if he contacted his carrier and he told them he did.

35.     The representatives from Google asked and guided him through resetting te phone connection settings to see if this would fix the issue which it did not.

36.     Plaintiff posited the issue was related to the update released in early March and the representative from Google told him network access would not be related to a software update.

37.     The representative advised Plaintiff that the issues were due to either a faulty SIM card or other hardware problems.

38.     Plaintiff was told to bring the device to a specific repair store or send it in to them.

39.     Plaintiff took the device to a repair store who confirmed his device did not have any hardware issues.

40.     Plaintiff discovered from researching online that others with these Pixels were having similar issues due to the update issued by Google.

41.     On March 20th I happened to notice that both of my Google Pixel 5 phones were no longer showing that I had "5G" coverage/cell service. 5G as I used my phones very often as wifi hotspots to log on to my computer for work while on the road.

42.     Plaintiff believed and expected the Products were and would remain 5G capable based on the labeling, website statements, tags, and/or other representations.

43.     Plaintiff sought to purchase a phone capable of accessing 5G networks because he relies on his phone for work and spends a lot of time driving.

44.     Plaintiff bought the Products at or exceeding the above-referenced price.

45.     Plaintiff paid more for the Products than he would have had he known they would not remain 5G capable throughout their usable life.

46.     Plaintiff chose between Defendant's Products and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

47.     The Products were worth less than what Plaintiff paid, and he would not have paid as much absent Defendant's false and misleading statements and omissions.

48.     Plaintiff intends to, seeks to, and will purchase the Products again when he can do so with the assurance their representations are consistent with their abilities, attributes, and/or composition.

49.     Plaintiff is unable to rely on the labeling and representations not only of these Products, but other similar mobile phones represented as 5G capable, because he is unsure whether those representations are truthful.

50.     If Defendant's labeling and representations were to be truthful, Plaintiff could rely on the labeling of other similar mobile phones represented as 5G capable.

Class Allegations

51.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Colorado Class:** All persons in the State of Colorado who purchased the Products during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in Iowa, Idaho, Montana, Wyoming, Utah, South Carolina, Mississippi, Arkansas and Arizona who purchased the Products during the statutes of limitations for each cause of action alleged.

52.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

53.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

54.     Plaintiff is an adequate representative because his interests do not conflict with other members.

55.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

56.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

57.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

58.     Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Colorado Consumer Protection Act, Colo. Rev. Stats. §§ 6-1-101, et seq., ("CCPA"),</u>
(Colorado Class)

59.     Plaintiff incorporates by reference all preceding paragraphs.

60.     Plaintiff believed the device he bought was capable of accessing 5G networks because that was how it was advertised to him.

61.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

62.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are

similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

63.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent, Wisconsin and/or the consumer protection statute invoked by Plaintiff.

64.     Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

65.     As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

<u>Breach of Contract</u>

66.     Plaintiff and Defendant entered into a contract for the sale of the Product.

67.     The terms included 5G capability throughout the usable life of the device.

68.     Plaintiff paid money for the Product, which Defendant received.

69.     Defendant breached the contract because the Products are no longer capable of accessing 5G networks.

<u>Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <em>et seq</em>.</u>

70.     The Products were manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that they were capable of accessing 5G networks.

71.     Defendant directly marketed the Products to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, its website and targeted digital advertising.

72.   Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

73.   Defendant's representations about the Products were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant they were capable of accessing 5G networks.

74.   Defendant's representations affirmed and promised that the Products were capable of accessing 5G networks.

75.   Defendant described the Products so Plaintiff and consumers believed they were capable of accessing 5G networks, which became part of the basis of the bargain that it would conform to its affirmations and promises.

76.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

77.   This duty is based on Defendant's outsized role in the market for these types of Products, a leader in mobile phone technology.

78.   Plaintiff recently became aware of Defendant's breach of the Products' warranties.

79.   Plaintiff provided notice to Defendant, its agents, representatives, retailers, and their employees that it breached the express and implied warranties associated with the Products.

80.   Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

81.   The Products did not conform to their affirmations of fact and promises due to Defendant's actions.

82.   The Products were not merchantable because they were not fit to pass in the trade as

advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because they were marketed as if were capable of accessing 5G networks.

83.    The Products were not merchantable because Defendant had reason to know the particular purpose for which they were bought by Plaintiff and class members, to access the internet and make calls over 5G networks, and they relied on Defendant's skill and judgment to select or furnish such a suitable product.

84.    Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

85.    Defendant had a duty to truthfully represent the Products, which it breached.

86.    This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a leading seller of mobile phones and technology services.

87.    Defendant's representations and omissions regarding the Products went beyond the specific representations on the labeling, website and/or packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

88.    These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

89.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

90.    Plaintiff and class members reasonably and justifiably relied on these negligent

misrepresentations and omissions, which served to induce and did induce, their purchase of the Products.

91.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

92.     Defendant misrepresented and/or omitted the attributes and qualities of the Products, that they were capable of accessing 5G networks.

93.     Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

<u>Unjust Enrichment</u>

94.     Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations;

3.  Monetary damages, statutory and/or punitive damages pursuant to statutory claims and interest pursuant to the common law;

4.  Costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   April 22, 2023

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com